# SUPERIOR COURT OF BALTIMORE CITY.

Filed March 5, 1924.

SIGISMUND BOROWSKI
VS.
JOHN A. MARCINKOWSKI.

*Richard E. Preece* for plaintiff.
*Paul M. Higinbothom* for defendant.

GORTER, BOND, CARROLL T., and FRANK, JJ.—

The motion in this case was made the subject of a special hearing by three judges with a view to having an agreement on some principles for deciding various perplexing questions which have been arising out of the difficulty of forwarding money for foreign-born citizens or residents to payees in Russia. Since the argument, however, there has been a decision by the Court of Appeals on a case closely similar to the present one, and much of the way has been cleared by it.

Blaustein vs. Belonski, decided February 1, 1924.

And the judges have also been referred to reviews of similar decisions in other jurisdictions in Volume 3, Legal Intelligencer (Penna.) 5, and 27 A. L. R. 1488.

In this case the plaintiff paid $300 to the defendant, a forwarder of money and steamship ticket seller, for 1,500 rubles to be deposited in the Petrograd Government Savings Bank. He signed an order blank giving details of the deposit, and received from the defendant here a receipt bearing the same number as that on the order blank, and reading, in translation:

Baltimore, Md., Sept. 26, 1917.
No. 1267

Received from G. Borowski three hundred dollars only ........Dollars. For Roubles 1500 rubles (one thousand five hundred) to be remitted to Savings Bank.

Residence in Petrograd, Russia.
JOHN A. MARCINKOWSKI.
$300.00                    per L. K. G.

The plaintiff testified, in addition that he was assured by the defendant that he would receive a deposit book in return. The plaintiff has had no notice of deposit in Petrograd. The defendant testified that he had no direct facilities for conveying money to Russia, and that he used for that purpose the Russian-American Steamship Line at New York, which had through arrangements and which acted as forwarding agent in such transaction. He further testified that he had sent this money to the Steamship Line, together with other amounts paid in to him for the same purpose; and that it was accompanied by the explicit directions on the order blank: and he produced acknowledgments of receipts of lump sums which, he testified, included the plaintiff's $300. The evidence stopped there. Defendant offered to prove by a letter from attorneys for the Steamship Line in New York that the money had gone forward from that point and had reached Russia, but that no news of it was obtainable in Russia. This letter, however, was excluded as unsworn testimony.

It is clear that merely by accepting the money for forwarding to Russia the defendant did not make himself responsible for its loss beyond his own office and facilities. That is the extent of his agreement, as construed by the Court of Appeals in the Blaustein case, apart from the promise or assurance that the plaintiff would receive a deposit book. That would seem to result,

too, from the rule in Greer vs. W. U. T. Co., 143 Md. 665, 673. And see the review of the cases in 27 A. L. R. 1488. And the evidence relating to the deposit book seems to us not legally sufficient to establish an agreement to stand responsible for delivery through regular agencies made use of in New York and beyond.

The opportunities afforded in this class of transactions for fraud are so easy, however, and the trust so great, that we think the defendant in each case ought to go further than was done here, and produce better evidence to show the receipt of the specific money by the forwarding agency in New York, and produce such evidence as is available in this country to explain the failure of the depositor, or of the defendant, to hear anything of the deposit from Russia. It is for that purpose that a new trial is ordered by the Judge before whom the case was tried.